IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MATTHEW MALCOLM KLEINMAN,    )
    )
                   Plaintiff,    )    Case No. 03-1723-KI
    )
        vs.    )    OPINION
    )
MULTNOMAH COUNTY; MULTNOMAH    )
COUNTY DISTRICT ATTORNEY'S OFFICE;    )
MICHAEL D. SCHRUNK; HAL FRESHAUER;    )
ROBBIE THOMPSON; CITY OF PORTLAND;    )
PORTLAND POLICE BUREAU; STEVEN OTT;    )
JOHN NELSON; HEIDI HALL; LEON    )
LEFEBVRE; KENT B. SCOTT; DOES 1-50,    )
    )
                 Defendants.    )

Michael E. Rose
Steenson, Schumann, Tewksbury,
Creighton and Rose, P. C.
500 Yamhill Plaza Building
815 S. W. Second Avenue
Portland, Oregon 97204

Laird Palmer
P. O. Drawer P
Mason, Texas  76856

        Attorneys for Plaintiff

Hardy Myers
Attorney General
Marc Abrams
Assistant Attorney General
Department of Justice
1162 Court Street N. E.
Salem, Oregon  97301-4096

William W. Manlove
Office of City Attorney
1221 S. W. Fourth Avenue, Room 430
Portland, Oregon  97204

        Attorneys for Defendants

KING, Judge:

Pursuant to 42 U.S.C. § 1983, plaintiff Matthew Kleinman alleges violations of his

Fourth, Sixth and Fourteenth Amendment rights arising from a 1997 criminal trial and conviction

in Multnomah County Circuit Court.  The remaining defendants, (1) Michael Schrunk, District

Attorney for Multnomah County ("Schrunk"), (2) the City of Portland, (3) Steven Ott, an

employee of the Portland Police Bureau, (4) John Nelson,[1] a Portland Police Bureau detective

("Nelson"), (5) Heidi Hall, an officer with the Portland Police Bureau ("Hall"),( 6) Leon

LeFebvre, a Portland Police Bureau detective, and (7) Kent Scott, an officer with the Portland

---

[1]According to the City defendants, John Nelson was never involved in the investigation.
Thomas Nelson was, however.  The City defendants assert that the failure to properly name the
appropriate defendant provides another basis to grant Nelson's motion for summary judgment.
Since I grant the motion on other grounds, I need not address the City defendants' argument.

Police Bureau (the latter six, collectively, "City defendants") have filed motions for summary judgment. Thus, before this court are the motions for summary judgment of Schrunk (#117) and the City defendants (#126), and their motions to strike (#190, 192). For the following reasons, I grant the motions for summary judgment, and grant in part and deny in part the motions to strike.

## BACKGROUND

I.  <u>Procedural Background</u>

Plaintiff originally brought this action against the Multnomah County District Attorney's Office ("DA's Office"), Schrunk, Multnomah County and several of its employees, the City of Portland, and the Portland Police Bureau ("PPB") and several of its employees.

In an Opinion dated October 15, 2004, I dismissed the DA's Office and the PPB. However, I declined to dismiss Schrunk or Hall, or the plaintiff's second claim for relief alleging malicious prosecution.

The parties subsequently stipulated to a dismissal of defendants Multnomah County, Thompson and Freshour.

The remaining defendants filed motions for summary judgment. Plaintiff conceded in oral argument that all claims against defendants LeFebvre, Scott and Ott should be dismissed.

Accordingly, only the following defendants remain in this action: Nelson, Hall, the City of Portland, and Schrunk.

II.  <u>Factual Background</u>

At approximately 10:45 pm on October 17, 1996, plaintiff and two other individuals pulled into the parking lot of a 7-Eleven in southeast Portland. While there, a confrontation between plaintiff and Junior Vaoiva ("Vaoiva") occurred. Vaoiva threw a bottle of beer at the

driver-side window of the car in which plaintiff was sitting. Plaintiff then pointed a handgun and fired three shots at Vaoiva, hitting him twice. Plaintiff and the two individuals drove away from the scene.

Shortly after the shooting, Portland police officers stopped the car, and placed the three individuals in handcuffs. An officer took plaintiff to OHSU where Vaoiva positively identified plaintiff as the shooter. Officers then took the three individuals to be interviewed by defendant Nelson at the PPB's Detective Division in downtown Portland. That night, Nelson determined that he had probable cause to charge plaintiff for assault in the first degree under Oregon law,[2] based on his interviews with plaintiff, and the two other individuals, his discussion with the arresting officers, and his knowledge of Vaoiva's positive identification of plaintiff as the shooter.

Additional Portland police officers arrived at the 7-Eleven after the shooting. One of the officers, defendant Hall, determined that the store had a video camera. Hall watched a videotape taken by the camera, with at least the store manager present. Hall seized the videotape, together with other evidence, logging each item on a property receipt (the "Hall receipt"). Hall also prepared a report in which she documented the seizure of the videotape (the "Hall report"). She placed the videotape in an evidence storage locker, and filed the report and receipt, at the PPB East Precinct. The Hall receipt and report were transferred from the PPB East Precinct to the PPB Records Office the next morning and the videotape arrived at the PPB Property Room at the same time, pursuant to the practice of the PPB. The Records Office and the Property Room are

---

[2]"A person commits the crime of assault in the first degree if the person intentionally causes serious physical injury to another by means of a deadly or dangerous weapon." ORS 163.185(1).

the main depositories for these items. Hall was not aware that anyone had been arrested in the shooting incident.

After Nelson arrested plaintiff, he sent several police reports to the DA's Office, along with his own investigative report. At some point later, Nelson received a group of police reports from the Records Office, which included the Hall report. Nelson testified that he never reviewed this complete set until years after the trial when, for the first time, he compared it to his set of reports that he gathered the night of the incident. Nelson did not forward this packet of reports to the DA's Office. Instead, he filed them in his investigative file. The reports sat in his file until early 2002 when the DA's Office asked him about the Hall report. It is usually the lead detective's responsibility to collect relevant information relating to the guilt and innocence of the accused, and to turn that information over to the DA's Office. It is the PPB's policy to turn over all collected information of relevance, information that proves guilt or innocence of the accused, to the DA's Office.

Based on the incidents that occurred on October 17, 1996, plaintiff was the subject of an indictment for attempted murder, attempted assault in the first degree, and two counts of assault in the second degree, in the case of <u>State of Oregon v. Matthew Malcolm Kleinman</u>, Multnomah County 96-10-37772.

The case prosecutor ordered and received a copy of a PPB report sometime before trial, after talking with defense counsel about what he understood was their own investigation into Vaoiva. The PPB report related to a January 20, 1996, incident (the "January incident") involving Vaoiva. This report reflected that Vaoiva had been drinking and had attacked a person with a beer bottle. Before plaintiff's trial, which began on February 12, 1997, plaintiff's

attorneys obtained discovery from the DA's Office. Plaintiff's attorneys did not, however receive copies of the Hall receipt or report, or a copy of the police report describing the January incident.

The policy at the DA's Office is that prosecutors turn over all pretrial discovery materials to defense attorneys at the earliest opportunity. Schrunk calls this the "open file" policy. The open file policy was in place prior to plaintiff's February 1997 trial. Prior to Kleinman's trial, pretrial discovery materials were provided to defense attorneys through the "Discovery Desk" manned by staff at the DA's Office. These staff would make copies of all pretrial discovery materials in the DA's Office file for a pending criminal case and provide a copy of those materials to defense attorneys at the earliest opportunity and well before trial. On occasion, deputy DAs would also provide discovery materials directly to defense counsel.

Schrunk was charged with the administrative oversight of the DA's Office, and for managing, training, and setting the policy, customs and practices for his office. His office organized a Continuing Legal Education course on October 11, 1993, and again on December 20, 1994, as well as on-the-job training, directed at addressing pretrial discovery obligations.

At trial, plaintiff relied on a self-defense theory. During pretrial motions, plaintiff's attorney sought admission of evidence related to an incident on April 20, 1996 (the "April incident"), where Vaoiva shattered a car window with a baseball bat and chased two women with a knife. The prosecutor argued against admission of this information. The trial court rejected plaintiff's attempt to introduce the evidence, and prohibited admission of the April incident.

On February 14, 1997, the jury acquitted plaintiff of attempted murder, finding that Vaoiva had substantially contributed to the offense by provoking the shooting, but the jury

convicted plaintiff of attempted assault in the first degree, and two counts of assault in the second degree. Sentencing was set for February 21, 1997.

Plaintiff failed to appear for sentencing. He was found four and a half years later in Texas and was returned to Oregon.

On April 13, 1998, the PPB's Property Room generated an Officer Disposition Report, known as a "trace." A "trace" is a request from the Property Room for an officer to authorize the disposal of items stored at the Property Room. The trace was generated in response to the conviction and sentencing of one of the individuals found in the car with plaintiff, who shared the same case number (as required by state law). Hall signed the trace report, authorizing the destruction of the evidence, despite the fact that plaintiff's case had not been closed because he had not yet been sentenced. Due to the backlog of work, the videotape was not destroyed until October 30, 2001.

Once plaintiff returned to Oregon he was sentenced, on December 3, 2001, and on the same day he filed a motion for a new trial. The motion was based in part on the prosecutor's failure to inform plaintiff's attorneys or the court of the police report that described the January incident involving Vaoiva. The trial court granted the motion.

In January of 2002, after the motion for a new trial had been granted, plaintiff learned that Hall had seized a videotape from the 7-Eleven and that the videotape had been destroyed.

The indictment against plaintiff was subsequently dismissed by motion of the prosecutor on or about May 10, 2002.

Plaintiff then filed this action seeking damages.

# LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

# DISCUSSION

Plaintiff brings a total of four claims. The first two claims are leveled against Nelson and Hall–failure to provide and preserve exculpatory evidence, and malicious prosecution. The final two claims are asserted against the City of Portland and Schrunk–failure to train and a custom or policy claim.

I.      Defendants' Motions to Strike

Both Schrunk and the City defendants move to strike the plaintiff's late responses to their motions for summary judgment. I find plaintiff has made a showing of excusable neglect. Accordingly, I deny defendants' motions on this basis.

In addition, defendants make specific objections to portions of the exhibits and declarations plaintiff submitted in support of his response to defendants' motions for summary judgment. Plaintiff's response to the motions to strike concedes many of these objections, and I allow defendants' objections on the points plaintiff concedes. Where plaintiff does not concede,

I accept his responses to the objections. Accordingly, defendants' motions to strike are granted in part and denied in part.

II.     Failure to Provide and Preserve Exculpatory Evidence (Sixth and Fourteenth Amendments)

Plaintiff complains that the actions of Hall and Nelson in failing to disclose material and exculpatory evidence or in allowing such evidence to be destroyed violated his Fourteenth and Sixth Amendment rights. Failure to disclose or preserve evidence is a due process violation. Brady v. Maryland, 373 U.S. 83 (1963).

Defendants make a number of arguments challenging the existence of a Brady violation. They argue that plaintiff's counsel knew or reasonably should have known about the videotape,[3] thereby excusing defendants from their disclosure obligations, and that admission of the videotape would not have changed the outcome of the trial. Defendants also assert that Hall and Nelson are entitled to qualified immunity.

Assuming without deciding that the videotape was material and exculpatory, that plaintiff's counsel had no knowledge of it, and that Hall and Nelson are not entitled to qualified immunity, plaintiff cannot recover civil damages from Hall and Nelson unless they acted in a way that is more than merely negligent, such as acting intentionally to conceal or destroy evidence. See Daniels v. Williams, 474 U.S. 327, 330 (1986) (negligent conduct not sufficient to state a claim under section 1983 for a due process violation); Gausvik v. Perez, 345 F.3d 813,

---

[3]Although defendants also argue about the significance of the January incident report, with respect to this claim I limit my analysis to the videotape and the Hall report and receipt. Plaintiff's Complaint charges only Freshauer and the trial prosecutor with violating his Fourteenth Amendment rights for failing to turn over the January incident report, and these two parties are no longer involved in the case.

818 (9th Cir. 2003) (plaintiff must show officer acted in bad faith in failing to preserve and gather exculpatory evidence, in Section 1983 claim for violation of due process rights); Villasana v. Wilhoit, 368 F.3d 976, 980 (8th Cir. 2004) (bad faith standard applies to due process claims for law enforcement officers who fail to disclose exculpatory evidence).[4]

A.    Defendant Hall

Plaintiff's Complaint alleges Hall intentionally failed to disclose her report and receipt, and violated his due process rights in ordering the destruction of the videotape.  The sum of plaintiff's evidence of Hall's intentional or bad faith failure to disclose the videotape is the following:  (1) Hall claims only she and the 7-Eleven manager watched the tape, while the 7-Eleven manager testifies that a male police officer watched it as well; (2) Hall's memory of the tape's contents is different from the 7-Eleven manager's testimony, opining that she does not remember seeing anything on the tape that was relevant while the 7-Eleven manager recalls the depiction of someone throwing a 40-ounce bottle of beer at either a person or a car; (3) before the incident at the 7-Eleven, Kleinman had filed a tort claim notice against the PPB alleging excessive use of force against him, and knowledge about the notice must have been widespread because the prosecutor knew about it.

Defendants argue in response that the evidence shows Hall did not act to conceal the videotape in collecting and reporting the existence of the videotape:  she responded to the scene, did her job, and filed an honest police report.  In addition, until sometime in early 2002, Hall did

---

[4]In the criminal context, a Brady violation may be established irrespective of the good or bad faith of the prosecutors.  Brady, 33 U.S. at 87.  However, when seeking damages under section 1983 for an alleged Brady violation, a plaintiff must demonstrate that the failure to disclose evidence was done intentionally or with bad faith.  See Newsome v. McCabe, 256 F.3d 747, 752 (7th Cir. 2001); Jean v. Collins, 221 F.3d 656 (4th Cir. 2000).

not know who Kleinman was or that he had been arrested, tried, or convicted for the October 17, 1996 shooting. Defendant argues that the fact Hall has a different recollection of the videotape from the 7-Eleven employee is not surprising given that both women were asked about it six years after they saw it. Finally, defendants assert that the prior tort claim notice is not sufficient evidence to prove bad faith. The only evidence in the record is that the prosecutor knew about it. There is no evidence that the police knew about it. In fact, all of the City defendants, including Hall, have testified that they had no knowledge of plaintiff's tort claim notice.

Similarly, defendants argue, Hall did not act with bad faith in destroying the videotape. While plaintiff was a fugitive, the Multnomah County Circuit Court ordered the destruction of certain property relating to the criminal case of one of the other individuals in the car with plaintiff. The case had the same number as Kleinman's case (as required by state law), and when Hall received a request from the Property Room for disposition of evidence, along with information that the case was closed, she approved destruction of the videotape. Hall does not remember specifically, but she believes she would have made some effort to find out the case status.

In comparing this case to Gausvik, I find that plaintiff has not demonstrated that a material issue of fact remains to be tried as to whether Hall intended to conceal this evidence, or destroy the videotape. In Gausvik, plaintiff sued a police officer for violating his due process rights in failing to preserve and gather exculpatory evidence. The police officer, who learned from his foster daughter that plaintiff had sexually abused her, failed to keep notes of his conversations with other potential victims who initially denied the abuse. Gausvik, 345 F.3d at 814-15. The court held that plaintiff had not shown any evidence of bad faith. Id. at 818.

Here, plaintiff's own Complaint alleges that Hall investigated the scene of the shooting, discovered the videotape, reviewed the videotape with the 7-Eleven manager, seized the videotape, logged the videotape under PPB Property receipt 580795, prepared a report documenting the existence of the videotape, and filed the report and receipt with the PPB East Precinct, placing the videotape in an evidence storage locker at the same location.

Even if plaintiff's assertions are accepted as true and Hall is "lying" about whether another officer saw the videotape, or about the contents of the tape, or about her knowledge of plaintiff's tort claim notice, the undisputed evidence is that she completed a report about the videotape, properly filed the report, and properly placed the videotape in the evidence locker. This report was part of the complete, original file at the PPB, and the detective in charge received it. Nothing about Hall's actions can be construed to demonstrate a desire to bury the videotape.

In addition, plaintiff appears not to dispute defendants' argument and evidence that Hall did not act in bad faith in approving the destruction of the videotape. Plaintiff does not brief this issue, but in his concise statement of material facts ("Plaintiff's CSMF") he alleges that Hall "failed to thoroughly check the status of the case, as she was required to do, prior to ordering evidence destruction." Plaintiff's CSMF, at No. 43. Negligence in failing to check the status of the case, without more, can hardly be deemed sufficient evidence of bad faith. Accordingly, I grant the City defendants' motion for summary judgment with respect to the first claim against Hall.

B.     Defendant Nelson

Plaintiff asserts that Nelson intentionally "failed . . . to ascertain," Complaint ¶ 98, the existence of the Hall report or receipt, and allowed the destruction of the videotape.

Plaintiff does not argue specifically how Nelson acted intentionally in failing to ascertain the existence of the Hall report and videotape. Nelson received a group of police reports, which included the Hall report and receipt, but never reviewed them. Plaintiff makes a vague reference in his response brief to plaintiff's tort claim notice, implying that this is evidence of Nelson's bad faith in failing to ascertain the existence of the Hall report and receipt. There is no evidence that any police officers knew about the tort claim notice; Nelson testified that he had no knowledge of it. Furthermore, plaintiff does not quarrel with defendants' statement that "[a]t no time did Nelson act to suppress or conceal any evidence related to the October 17, 1996 shooting." Defendants' Concise Statement of Material Facts at ¶ 44; Plaintiff's CSMF at ¶ 44. Again, comparing the facts here with those in <u>Gausvik</u>, I cannot find that there is a material issue of fact as to Nelson's motivation in failing to discover the Hall report.

Plaintiff does not brief the issue of whether Nelson acted in bad faith in allowing the videotape to be destroyed. However, given the undisputed evidence that Hall approved the destruction of the videotape, and that Nelson had no knowledge of the videotape at any time prior to its destruction, there are no material issues of fact precluding summary judgment in Nelson's favor.

Accordingly, I grant the City defendants' motion for summary judgment with respect to the first claim against Nelson.

III.    <u>Malicious Prosecution (Fourth and Fourteenth Amendments)</u>

Plaintiff alleges in his Complaint that defendants Hall and Nelson intentionally and maliciously initiated a criminal action against him based on incomplete and falsified accounts and reports, violating his Fourth and Fourteenth Amendments.

In this circuit, the general rule is that a claim of malicious prosecution is not cognizable under section 1983 if process is available within the state judicial system to provide a remedy. Usher v. Los Angeles, 828 F.2d 556, 561 (1987). However, an exception exists if defendants prosecuted plaintiff "with malice and without probable cause, and that they did so for the purpose of denying h[im] equal protection or another specific constitutional right." Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995) (citation omitted); Shoemaker v. Selnes, 220 Or. 573, 577-78, 349 P.2d 473 (1960).

Defendants Hall and Nelson make a number of arguments in support of their motion for summary judgment, including that Hall and Nelson are entitled to qualified immunity, that plaintiff was provided constitutionally sufficient due process, that Hall never knew about the prosecution, and that Nelson had probable cause to charge plaintiff, a complete defense to malicious prosecution. Plaintiff does not respond to these arguments.

Assuming without deciding that Hall and Nelson are not entitled to qualified immunity, I agree with defendants that Hall and Nelson are entitled to summary judgment on plaintiff's second claim. There was ample probable cause to charge plaintiff with first degree assault based on the following facts: Vaoiva had been shot, and had been taken to OHSU for treatment of his gunshot wounds and, when plaintiff was taken to him, Vaoiva made a positive eyewitness identification of plaintiff as the shooter. Plaintiff does not dispute these facts.

"Probable cause arises when an officer has knowledge based on reasonably trustworthy information that the person asserted has committed a criminal offense." Gausvik, 345 F.3d at 818. I find that there was probable cause to support charging Kleinman with assault in the first degree, and neither Nelson nor Hall can be liable on a malicious prosecution claim.

Accordingly, the City defendants' motion for summary judgment is granted with respect to Nelson and Hall on the second claim for malicious prosecution.

IV.    Failure to Train (Fourteenth Amendment) and Custom and Policy (Fourteenth Amendment)

Plaintiff alleges the City of Portland and Schrunk are responsible for training their employees, and that they failed to institute adequate training programs and policies to ensure adequate disclosure of exculpatory evidence, and to prevent inadvertent, negligent or intentional destruction of evidence. Plaintiff's custom and policy allegation simply asserts that the "foregoing acts and omissions of the individual defendants were in accordance with the official or unofficial customs, policies and/or practices" of the City of Portland and Schrunk. Complaint ¶ 142. These claims overlap and are evaluated together below.

A.    City of Portland

A municipality may be held liable under Section 1983 only when the municipality inflicts an injury, not under *respondeat superior* liability. Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694 (1978).[5] Accordingly, an inadequate training claim may serve as the basis of municipal liability only after a three-part test has been met. Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989); City of Canton v. Harris, 489 U.S. 378, 387-391 (1989). First, the existing training program must be inadequate. "A training program will be deemed adequate if it 'enable[s] officers to respond properly to the usual and recurring situations with which they must deal.'" Merritt, 875 F.2d at 770, (quoting Canton, 489 U.S. at 388). If the

_____

[5]Defendants assert in a footnote that if the individual defendants are deemed not to have violated plaintiff's constitutional rights, the City itself is also not liable. However, liability may attach to a city for improper training even if the individual officers are exonerated. Hopkins v. Andaya, 958 F.2d 881, 888 (9th Cir. 1992) (per curiam).

training program is inadequate it may constitute a city policy, but only if the City's failure to train its employees evidences a "deliberate indifference" to the rights of individuals with whom the officers come in contact. Id., (citing Canton, 489 U.S. at 387). To prove deliberate indifference, plaintiff must show that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id., (citing Canton, 489 U.S. at 391). Finally, the inadequate training must be shown to have "actually caused" the constitutional deprivation. Id., (citing Canton, 489 U.S. at 391).

With respect to training employees on providing materials to the DA's Office, defendants point out that the Complaint contains no specific allegations about how plaintiff believes the City failed to train its police officers. However, the City itself provides little in the way of information about what training it typically offers its officers. Nelson attended the Portland Police Academy in 1973 to 1974. After that, he attended yearly in-service training organized by the PPB. He also attended several specialized investigative schools while a detective with the PPB. The City offers no details about his curriculum. In addition, the City provides a list of training classes attended by all of the City defendants, without offering an explanation about which classes address a police officer's obligations to assist the prosecution in complying with its Brady obligations.

Instead, the City relies on Nelson's testimony as to the steps he normally takes in providing evidence to the DA's Office, which is evidence of his proper training, according to the City. Nelson testified that with the help of administrative staff he prepares a package of police reports containing at least two sets of written documents, such as police reports or property

receipts, and this package is delivered to the appropriate intake unit at the DA's Office prior to the arrestee's arraignment. Nelson also testifies that plaintiff's case is the first where an item of evidence was overlooked in any of his cases.

The City provides more details of its training on the appropriate time to destroy evidence. It points to the yearly in-service training police officers attend, including Hall and Nelson, dealing with methods to help them determine case status. This course is also provided at the Advanced Academy attended by new officers, at which officers are directed to check the computer system, obtain a copy of the police report and either check with the deputy DA or use the DA computer system prior to authorizing the destruction of evidence. In addition, the PPB Property Room provides training bulletins for officers regarding the use of computer systems to help determine case status. Since at least 1993, the PPB has had a directive regarding the handling of evidence and the disposal of property in the property room.

Plaintiff neither disputes these facts nor responds to these arguments. However, he offers the following facts in his CSMF, with regard to turning material over to the DA's Office: nothing in Nelson's training required him to compare reports received from officers with those he received from the PPB Records Office, Plaintiff's CSMF No. 44; nothing in Nelson's training required him to check with the Records Office prior to a case going to trial to ensure that he had complete copies of all PPB reports, Plaintiff's CSMF Additional Facts No. 40.

With respect to determining whether evidence could properly be destroyed, plaintiff offers the following facts: Hall had access to three computer databases to determine whether a case was still active, but stated that there were no rules or policy requiring her to search all three databases, Plaintiff's CSMF Additional Facts No. 34; the standard procedure involved searching

by case number, which usually brought up the names associated with the case, but Officer Hall stated that she did not search the databases under all of the names, admitting that if all the names were not checked the evidence could be destroyed while a case was still pending, Id. No. 35.

Even viewing the evidence in the light most favorable to plaintiff, it is difficult to conclude that training was necessary to teach Nelson to review the reports that came across his desk. Indeed, it appears Nelson was fully aware of the City's policy of putting the detective in charge of providing all relevant materials to the DA's Office; if he had known about the videotape he "certainly would have brought that fact to the attention of the deputy DA handling the criminal case." Affidavit of Thomas Nelson, ¶ 14.

It is also difficult to find that the City's training on the proper disposal of evidence was inadequate. The City offers an example of a training bulletin provided to its officers. The bulletin directs officers to check case status prior to approving the destruction of evidence. Indeed, the bulletin contains the following statement, "Officers are reminded that RESPONSIBILITY FOR DETERMINING THE DISPOSITION OF EVIDENCE LIES WITH THE OFFICER." Affidavit of William Swanson, Exhibits 2 and 3. The bulletins also contain directions for using one of the computer databases to determine case status.

Nevertheless, assuming that the training was inadequate, I am unable to find that there are material issues of fact as to the City's deliberate indifference. Deliberate indifference is apparent when the need for more or different training is obvious. Where, as here, Nelson testifies that he has never overlooked evidence before, where the City alerts police officers that it is their responsibility to use the databases to confirm case status prior to destroying evidence, and where plaintiff offers no other evidence of police officers at the City failing to disclose evidence, I

cannot find that there is a material issue of fact as to whether the City "can reasonably be said to have been deliberately indifferent to the need for more training." Merritt, 875 F.2d at 770. The destruction of evidence or the failure to disclose exculpatory evidence alone is not proof of inadequate training. Indeed, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." Canton, 489 U.S. at 391.

Since I find that all of the City defendants are entitled to summary judgment for the reasons set forth above, I need not reach the City's argument for application of the fugitive disentitlement doctrine.

B.      Schrunk

          Plaintiff's claim against Schrunk alleges not only that he failed to train his prosecutors regarding their pretrial discovery obligations, but also that he inadequately trained City of Portland police officers. Indeed, much of plaintiff's briefing is devoted to urging that Schrunk was responsible for adequately training and instructing the police upon whom the deputy DAs rely.[6] In addition, he argues in his response brief that Schrunk's open file discovery policy was constitutionally deficient.

Although Schrunk argues to the contrary, plaintiff may assert a claim against an official for personal liability if the official devised a facially unconstitutional policy. Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991). In addition, he may assert an inadequate

---

[6]"[H]is failure to train police" violated the plaintiff's due process rights, Plaintiff's Corrected Memo at 20; "[I]t is incumbent upon the District Attorney to provide adequate training and instruction to the police agencies upon which they depend," id. at 21; "Schrunk failed to ensure that PPB employees and detectives were adequately trained so as to prevent intentional, negligent and accidental destruction of evidence," id.

training claim against a state official, so long as it is done in his personal capacity. Supervisors can be held liable for "their own culpable action or inaction in the training, supervision, or control of subordinates." Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000). The Eleventh Amendment does not prevent suits against state officers for money damages to be paid out of the officers' own pockets. Kentucky v. Graham, 473 U.S. 159, 163-70 (1985). Therefore, Schrunk's argument for summary judgment on the basis of sovereign immunity is denied. However, Schrunk cannot be liable for the inadequate training of PPB officers. He does not employ or supervise them. Schrunk can be liable, if at all, only for inadequately training his own employees.

Schrunk makes a number of arguments, including that he is entitled to absolute and qualified immunity. He also argues that the complaint fails to state a claim against him because it does not allege that he was personally involved in any alleged deprivation of constitutional rights, and that the claims are plead as violations of the Fourteenth Amendment but do not mention the legal basis for the claims. Finally, Schrunk argues that plaintiff fails to provide sufficient evidence that Schrunk failed to train his subordinates, that Schrunk played an affirmative part in the alleged constitutional deprivation, that Schrunk acted with deliberate indifference, or that the failure to train caused a violation of his rights. Schrunk also argues that there is no evidence that the videotape and January incident report constituted Brady material.

For Schrunk to be liable for any alleged inadequacy of his open file policy, the policy must be "so deficient that [it] itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman, 942 F.2d at 1446 (citation omitted). In addition, in order to prevail on a claim that a supervisor failed to properly train subordinates, plaintiff must

show that the failure to train amounted to deliberate indifference.  Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998).

Plaintiff argues that Schrunk's open file policy was seriously deficient because it did not require the deputy DAs to search for exculpatory evidence and seek out Brady material in the hands of the police.  As a result, the policy was inadequate to promote the disclosure, and to prevent the intentional or inadvertent destruction, of material and exculpatory evidence.

At the center of plaintiff's argument is his concern that Schrunk's open file policy did not comply with the strictures of Brady v. Maryland, 373 U.S. 83, 87 (1963), as further explained in Kyles v. Whitley, 514 U.S. 419, 437 (1995).  He argues that Kyles interpreted Brady to impose a duty upon prosecutors to learn of any favorable evidence known to the investigating police and turn it over to the defense.

It is true that Kyles has been interpreted in this Circuit as requiring the prosecution to learn of any exculpatory evidence known to others acting on the government's behalf.  United States v. Hanna, 55 F.3d 1456, 1461 (9th Cir. 1995).  However, Schrunk has provided evidence that his open file policy included the requirement that deputy DAs pursue all relevant evidence, and when they obtained it they were to turn it over to defense counsel.  Schrunk testified that his open file policy was "grounded in the ABA Standards for Criminal Justice," which he helped write.  Affidavit of Michael D. Schrunk at ¶ 2.  The ABA Standards to which Schrunk refers directed that "[a] prosecutor should not intentionally avoid pursuit of evidence because he or she believes it will damage the prosecution's case or aid the accused."  Affidavit of Phillip M. Bender, Exhibit 15 at 3.  The commentary to the standard states, "The duty of the prosecutor is to acquire all the relevant evidence without regard to its impact on the success of the prosecution."

Id. at 5. In addition, Schrunk testified to a "continuing contact" between the deputy DAs and the police, and that his Office urges the deputy DAs "at every step to make sure the file is complete." Supplemental Declaration of Michael E. Rose, Exhibit 1 at 69. This is corroborated by the prosecutor's testimony who would "in every case" ask the police "'Do I have everything?'" Affidavit of Phillip M. Bender, Exhibit 3 at 40.[7] Furthermore, the parties agree that Schrunk had an open file policy, meaning, "If we have it, you get it." Id. at 36. Thus, I cannot find that there is a material issue of fact as to the deficiency of Schrunk's open file policy.

With respect to his inadequate training claim, plaintiff complains that the prosecuting attorney here was not trained to contact officers other than the detective in charge. In addition, he argues that no structure or systematic process was in place for determining whether the DA's Office had received complete discovery from the investigating police agencies. The deputy DA would simply ask the case detective at the PPB if there was "anything more," and that this was not part of the training. Indeed, plaintiff claims the only structure relied on by Schrunk in ascertaining whether or not discovery was complete was a pretrial conference, which plaintiff claims was unavailable in the category of case that was Kleinman's.

However, plaintiff has not provided any evidence that Schrunk acted with "deliberate indifference" in his alleged failure to train his staff on the requirements of Kyles. Where there is no evidence that Schrunk had any knowledge or information that there were any issues with the DA's Office training, it is hard to find Schrunk responsible. Kleinman cannot show Schrunk deliberately ignored problems, or that he was aware or reasonably should have been aware that

---

[7]Plaintiff apparently disputes this fact. Plaintiff's CSMF Response to Schrunk, No. 6. However, he disputes the fact by citing the very testimony quoted above.

the prosecutor was acting in an unconstitutional manner that carried a substantial risk of causing serious harm. There is no evidence of a single instance, much less a pattern, of Brady violations by the DA's Office prior to the Kleinman case.

Assuming without deciding that Schrunk is not entitled to absolute or qualified immunity, my review of the record reveals no evidence which could establish that Schrunk's policy was facially unconstitutional, or that Schrunk was deliberately indifferent in any alleged failure to train prosecutors.

## CONCLUSION

I grant in part and deny in part the motions to strike (#190,192). I grant Schrunk's motion for summary judgment (#117), and the City defendants' motion for summary judgment (#126). This case is dismissed with prejudice.

Dated this ___28th_____ day of July, 2005.


___/s/ Garr M. King_____
Garr M. King
United States District Judge